1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CYNTHIA H. CATERSON,

11                    Plaintiff,                                    No.  C04-1571L

12        vs.

13   THE LYNNWOOD POLICE                          ORDER GRANTING IN PART
     DEPARTMENT, *et al.*,                        DEFENDANTS' MOTION FOR
14                                                SUMMARY JUDGMENT

15                    Defendants.

16

17        This matter comes before the Court on "Defendants' Motion for Summary

18   Judgment."  Dkt. # 33.  Summary judgment is appropriate when, viewing the facts in the light

19   most favorable to the nonmoving party, there is no genuine issue of material fact which would

20   preclude the entry of judgment as a matter of law.  The party seeking summary dismissal of the

21   case "bears the initial responsibility of informing the district court of the basis for its motion,

22   and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and

23   admissions on file, together with the affidavits, if any,' which it believes demonstrate the

24   absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

25   (quoting Fed. R. Civ. P. 56(c)).  Once the moving party has satisfied its burden, it is entitled to

26   summary judgment if the non-moving party fails to designate "specific facts showing that there

27

28   ORDER GRANTING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 1

is a genuine issue for trial." Celotex Corp., 477 U.S. at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," however, and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable jury could return a verdict in its favor." Triton Energy Corp. v. Square D Co., 68 F.3d 1216, 1221 (9th Cir. 1995).

Taking the evidence presented in the light most favorable to plaintiff, the Court finds as follows:

Plaintiff Cynthia Caterson, a police officer with the City of Lynnwood Police Department, filed the instant action for damages and injunctive relief based on (a) defendants' alleged discrimination against female police officers in violation of the Equal Protection clause of the Fourteenth Amendment and the Washington Law Against Discrimination ("WLAD") and (b) their alleged retaliation against plaintiff in violation of her First Amendment rights and RCW 49.60.210. Having reviewed the memoranda, declarations, and exhibits submitted by the parties and having heard the arguments of counsel, the Court finds that there is evidence from which a reasonable fact finder could conclude that plaintiff was assigned tasks that were less weighty than those given to male detectives in the Criminal Investigation Division ("CID"), that she was not provided the same training opportunities as her male counterparts, and that plaintiff was transferred out of the CID and began receiving negative performance evaluations almost immediately after complaining of sex discrimination within the division. The issue raised by defendants in their motion for summary judgment is whether these facts give rise to a viable cause of action against any of the defendants. Each of plaintiff's claims is considered below.

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 2

1

**A.  Section 1983 Claims -- Equal Protection and First Amendment**

2          Defendants argue that plaintiff cannot seek redress for her alleged constitutional

3   violations under 42 U.S.C. § 1983 because she cannot establish that defendants acted "under

4   color of law."  Defendants argue that an employee of the state is not acting "under color of law"

5   when he or she is making employment-related decisions because there is no state law which

6   specifically vests employment decision-making authority in defendants.  Thus, defendants argue,

7   defendants were not exercising power "possessed by virtue of state law and made possible only

8   because the wrongdoer is clothed with the authority of state law."  McDade v. West, 223 F.3d

9   1135, 1139-40 (9th Cir. 1999) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

10          Defendants misconstrue the "under color of law" analysis.  "It is firmly established

11   that a defendant in a § 1983 suit acts under color of state law when he abuses the position given

12   to him by the State.  Thus, generally, a public employee acts under color of state law while

13   acting in his official capacity or while exercising his responsibilities pursuant to state law."

14   West, 487 U.S. at 49-50.

15          Defendants offer no cases to support their sweeping claim that actions taken by the

16   state in its role as employer are somehow exempt from the scope of § 1983:  the number of

17   instances in which such claims have been substantively considered by the courts strongly

18   suggests that defendants' proposed exemption does not exist.  See, e.g., Lowe v. City of

19   Monrovia, 775 F.2d 998 (9th Cir. 1985).  As long as defendants were "acting, purporting, or

20   pretending to act in the performance of [their] official duties," color of law is present.  McDade,

21   223 F.3d at 1140.  In this case, defendants' ability to deprive women of equal opportunity in the

22   CID, to transfer plaintiff out of the CID when she complained of unequal treatment, and to

23   influence her performance evaluations arose out of their positions as state officers.  There is no

24   evidence, and defendants have not alleged, that they were acting in their private capacities, as

25   was the case in Van Ort v. Estate of Stanewich, 92 F.3d 831, 838 (9th Cir. 1996), and Huffman

26   v. County of Los Angeles, 147 F.3d 1054, 1058 (9th Cir. 1998).  Defendants were authorized by

27

28   ORDER GRANTING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 3

1   the City, and expected as part of their official duties, to manage police department personnel:

2   their status as city employees enabled them to affect the terms and conditions of plaintiff's

3   employment, satisfying the "under color of law" element of § 1983.

4           In the alternative, defendants suggest that plaintiff's failure to bring a Title VII

5   action is relevant to the § 1983 analysis.  As a general matter, Title VII does not deprive

6   employees of other available remedies (Johnson v. Railway Express Agency, 421 U.S. 454, 461

7   (1975)) and the Ninth Circuit has expressly found that Title VII and § 1983 are not mutually

8   exclusive (Roberts v. College of the Desert, 870 F.2d 1411, 1415 (9th Cir. 1988)).  As long as

9   the conduct alleged rests on a claim of infringement of rights guaranteed by the Constitution, a

10  § 1983 claim is available even if the claim arose in the context of an employer-employee

11  relationship.

12  **B.  Discrimination Claims Under the Equal Protection Clause and WLAD**

13          Claims of discrimination under the Equal Protection Clause of the Fourteenth

14  Amendment and RCW 49.60 are subject to the burden-shifting analysis of McDonnell Douglas

15  Corp. v. Green, 411 U.S. 792 (1973).  See Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107,

16  1112 (9th Cir. 2003); Bator v. Hawaii, 39 F.3d 1021, 1028 n.7 (9th Cir. 1994).  In order to make

17  out a *prima facie* case of unlawful employment discrimination on the basis of gender, plaintiff

18  may rely on indirect evidence of discriminatory intent by showing that (1) she is a member of a

19  protected class, (2) she was satisfactorily performing her job, (3) she suffered an adverse

20  employment action, and (4) similarly situated employees who were not in the protected class

21  were treated more favorably.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993)

22  (citing McDonnell Douglas, 411 U.S. at 802).  Plaintiff's initial burden is to show that the

23  employer's conduct, if left unexplained, gives rise to an inference that it is more likely than not

24  that such actions were "based on a discriminatory criterion illegal under the Act."  Furnco

25  Constr. Corp. v. Waters, 438 U.S. 567, 575 (1978) (quoting International Bhd. of Teamsters v.

26  United States, 431 U.S. 324, 358 (1977)).  Plaintiff's burden in establishing a *prima facie* case is

27

28  ORDER GRANTING IN PART DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 4

1   minimal and need only give rise to an inference of unlawful discrimination.  If the elements of

2   the *prima facie* showing are satisfied, plaintiff is entitled to a presumption that his employer

3   unlawfully discriminated against him.  Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir.

4   1994).

5        Once a *prima facie* case has been presented, the burden shifts to defendants "to

6   articulate a legitimate nondiscriminatory reason for [their] employment decision."  Wallis, 26

7   F.3d at 889.  If defendants are able to rebut the presumption of discrimination raised by the

8   *prima facie* showing, plaintiff may avoid summary judgment by producing enough evidence to

9   allow a reasonable factfinder to conclude either (1) that defendants' proffered reasons for the

10  adverse employment action were false or (2) that the true reasons for the action were

11  discriminatory in nature.  Warren v. City of Carlsbad, 58 F.3d 439, 443 (9th Cir. 1995).  "The

12  ultimate burden of persuading the trier of fact that the defendant intentionally discriminated

13  against the plaintiff remains at all time with the plaintiff."  Texas Dep't of Cmty. Affairs v.

14  Burdine, 450 U.S. 248, 253 (1981).

15       Defendants do not seriously contest any of the elements of plaintiff's *prima facie*

16  case.  Instead, they skip to the last step of the McDonnell Douglas framework, arguing that

17  plaintiff is unable to overcome defendants' nondiscriminatory reasons for her transfer back to

18  patrol and adverse performance evaluations in light of the "same actor inference."  That

19  inference arises in both federal and state law and is based on the principle that "an employer's

20  initial willingness to hire the employee-plaintiff is strong evidence that the employer is not

21  biased against the protected class to which the employee belongs."  Coghlan v. Am. Seafoods

22  Co., LLC, 413 F.3d 1090, 1096 (9th Cir. 2005).  See also Hill v. BCTI Income Fund - I, 144

23  Wn.2d 172, 189 (2001) ("When someone is both hired and fired by the same decisionmakers

24  within a relatively short period of time, there is a strong inference that he or she was *not*

25  discharged because of any attribute the decisionmakers were aware of at the time of hiring.").

26       It is not clear whether the same actor inference applies in this case.  Plaintiff has

27

28  ORDER GRANTING IN PART DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 5

1   presented evidence that Chief Steven Jensen, the final decisionmaker regarding both her transfer

2   into and out of the CID, made statements exhibiting discriminatory animus against women.

3   Without considering the "crucial" distinction between cases that are based on direct versus

4   circumstantial evidence (Coghlan, 413 F.3d at 1095), defendants argue that the same actor

5   inference applies and that plaintiff should be required to make out a strong case of bias before

6   being permitted to proceed to trial on her discrimination claims.  Where plaintiff has direct

7   evidence of discriminatory animus on the part of the decisionmaker, however, such evidence is

8   considered extremely probative and therefore "very little" is needed to raise a triable issue of

9   fact.  Coghlan, 413 F.3d at 1095.  Even if the Court were to assume that the same actor inference

10  applies to discrimination claims supported by direct evidence, plaintiff's evidence of clearly

11  sexist statements by the final decision-maker "[make] out the strong case of bias necessary to

12  overcome this inference," as to the Lynwood Police Department.  Coghlan, 413 F.3d at 1098.

13          Although plaintiff has not provided any direct evidence of discriminatory animus

14  on the part of Commander Steven Rider, language in the Coghlan decision suggests that this may

15  be one of those situations in which the same actor inference does not apply.  "Cases not

16  involving hiring and firing could arise, no doubt, in which the same-actor inference would be

17  inappropriate.  For example, if a plaintiff were alleging that his employer systematically

18  excluded members of a certain class from upper-management positions, then the mere fact that

19  the employer was willing to hire members of that class for lower-level positions would surely

20  not prove otherwise."  Coghlan, 413 F.3d at 1096 n.9.  Plaintiff's theory of the case is that

21  defendants discriminate against female detectives in the assignment and training opportunities

22  provided, not in the hiring process.  She has produced evidence from which one could infer that

23  she was transferred into the CID based on the assumption that she would be willing to perform

24  tasks and assignments that were in keeping with a traditional female stereotype, such as

25  investigating child molestation, shoplift, and misdemeanor cases, canvassing the neighborhood,

26  and recovering and booking evidence.  Her claim is therefore similar to the hypothetical

27

28  ORDER GRANTING IN PART DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 6

presented by the Coghlan court and the mere fact that Commander Rider was willing to bring women into the CID does not disprove plaintiff's theory that such women were denied weighty assignments and adequate training opportunities based on their gender. Even taking into consideration the fact that Commander Rider selected plaintiff for transfer into the CID, plaintiff's evidence regarding the subsequent denial of training opportunities, the failure to assist plaintiff with her interview techniques, and the disparate job assignments once she joined the CID is not inconsistent with her initial selection and overcomes the same actor inference to the extent it applies in this case.

### C. Retaliation Claim Under the First Amendment

Plaintiff has alleged that she was subjected to unfavorable treatment after she complained about the discriminatory assignment and training practices in the CID and that such retaliatory conduct violated the First Amendment of the United States Constitution. In order to succeed on this claim, plaintiff must show that (1) she engaged in protected speech, (2) the defendants took an adverse employment action against her, and (3) her speech was a substantial or motivating factor for the adverse employment action. Coszalter v. City of Salem, 320 F.3d 968, 973 (9th Cir. 2003). Speech is protected under the First Amendment if it is of "public concern," meaning that it relates to "any matter of political, social, or other concern to the community . . . ." Hyland v. Wonder, 972 F.2d 1129, 1137 (9th Cir. 1992).

> [W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior . . . Our responsibility is to ensure that citizens are not deprived of fundamental rights by virtue of working for the government; this does not require a grant of immunity for employee grievances not afforded by the First Amendment to those who do not work for the state.

Connick v. Myers, 461 U.S. 138, 147-48 (1983) (internal citation omitted).

Plaintiff's speech concerned the type of personnel matter that is unprotected under

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 7

1    the public concern test.  Her complaints regarding the assignments and training she was given

2    raised grievances about her own job conditions, not personnel matters pertaining to others or of

3    general interest to the public.  See Thomas v. City of Beaverton, 379 F.3d 802, 808 (9th Cir.

4    2004); Hyland, 972 F.2d at 1137.  Plaintiff's First Amendment claim therefore fails as a matter

5    of law.

6         **D.  Section 1983 Claims -- Qualified Immunity**

7              Defendant Rider argues that he is entitled to qualified immunity because the

8    assignment of tasks and his recommendation to transfer plaintiff out of the CID were objectively

9    reasonable.  Defendant misconstrues the qualified immunity analysis.  When a defendant claims

10   qualified immunity from civil damages, plaintiff is required to show that the official has violated

11   "clearly established statutory or constitutional rights of which a reasonable person would have

12   known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Having determined that, if all

13   disputed facts are taken in the light most favorable to plaintiff, defendant Rider discriminated

14   against plaintiff based on her gender by assigning her less weighty tasks/cases and by depriving

15   her of training opportunities,[1] the Court must determine whether the right allegedly violated was

16   clearly established at the time defendant acted.  "The relevant, dispositive inquiry . . . is whether

17   it would be clear to a reasonable officer that his conduct was unlawful in the situation he

18   confronted."  Saucier v. Katz, 533 U.S. 194, 202 (2001).[2]  Contrary to defendants' argument, the

19

20         [1] Plaintiff has not raised a genuine issue of material fact regarding her First Amendment claim so
21   the issue of qualified immunity regarding that claim is moot.

22         [2] In an effort to prevent constitutional law from stagnating, the Supreme Court insists that the
23   trial court determine whether defendant's conduct violated a constitutional right before determining
     whether the constitutional right was clearly established at the time of plaintiff's injury.  Without such a
24   two-part analysis, individual rights would be frozen in time as each reviewing court simply determined
     whether or not defendant's conduct had  been found unconstitutional in the past.  By first evaluating the
25   constitutional claim on its merits, constitutional rights may develop over time even if the defendant in a
     particular case is immune from suit because the right found to have been violated was not clearly
26   established at the time he or she acted.  If similar conduct should occur in the future, the earlier finding
     that the conduct implicated a constitutional right would ensure that the later defendant would be held
27

28   ORDER GRANTING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 8

1   issue is not whether defendant Rider has offered a reasonable, non-discriminatory justification

2   for the assignments and training provided to plaintiff: such an inquiry is merely one step of the

3   underlying McDonnell Douglas legal analysis.  Rather, the Court considers the evidence in the

4   light most favorable to plaintiff to determine whether a reasonable person in Commander Rider's

5   position could have believed that the conduct alleged was lawful.  Because it was clearly

6   unlawful in 2001 and 2002 to discriminate against an employee in assignments and training

7   based on her gender, Commander Rider is not entitled to qualified immunity.

8   **E.  Section 1983 Claims -- Municipal Liability**

9   Local government bodies, including the City of Lynnwood and its Police

10  Department, "can be sued directly under § 1983. . . where . . . the action that is alleged to be

11  unconstitutional implements or executes a policy statement . . . or decision officially adopted

12  and promulgated by that body's officers," or where the constitutional deprivation is "visited

13  pursuant to governmental 'custom' even though such custom has not received formal approval."

14  Monell v. New York City Dept. of Social Serv., 436 U.S. 658, 690-91 (1978).  Discrete

15  decisions by a government official with ultimate authority on a matter may serve as

16  "policymaking" by the government.  Pembauer v. Cincinnati, 475 U.S. 469, 481 (1986).

17  Chief Jensen, as the "final authority for all hiring, transfer, promotional, and

18  disciplinary decisions" in the City of Lynnwood Police Department (Decl. of Chief Steven

19  Jensen at ¶ 2 (Dkt. # 36)), approved plaintiff's transfer out of the CID.  To the extent her

20  discrimination claim is based on that transfer, the final decisionmaker for the municipality

21  directly caused the alleged constitutional violation and plaintiff's claim against the City may

22  proceed.  The acts of subordinate employees, such as Commander Rider, are generally

23  insufficient to create municipal liability under § 1983, however.  See Monell, 436 U.S. at 694.

24  Although the constitutionally infirm acts of subordinate employees may suggest the existence of

25

26  ─────────────────

27  responsible and would not be entitled to qualified immunity.

28  ORDER GRANTING IN PART DEFENDANTS'
    MOTION FOR SUMMARY JUDGMENT - 9

a municipal policy or custom where there is evidence of "widespread practices or 'evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded'" (<u>Nadell v. Las Vegas Metro. Police Dept.</u>, 268 F.3d 924, 929 (9th Cir. 2001)), plaintiff has not provided any evidence of a policy authorizing discriminatory assignments/ training or a history of similar constitutional violations.  The City of Lynnwood is entitled to summary judgment on plaintiff's discrimination claim under the Fourteenth Amendment to the extent it is based on the assignments and training provided to plaintiff while in the CID.

### F.  Retaliation Claim under RCW 49.60

To make out a *prima facie* case of retaliation under the Washington Law Against Discrimination, plaintiff must demonstrate that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision." <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>, 323 F.3d 1185, 1196-97 (9th Cir. 2003).[3]  The burden then shifts to defendants "to articulate a legitimate, non-discriminatory reasons for the adverse employment action." <u>Manatt v. Bank of Am., N.A.</u>, 339 F.3d 792, 800 (9th Cir. 2003).  Plaintiff bears the ultimate burden of persuasion, however, and must rebut the employer's justification for the adverse employment action by showing that the proffered reason was pretext or that retaliation was the real motivating factor. <u>Stegall v. Citadel Broadcasting Co.</u>, 350 F.3d 1061, 1068-69 (9th Cir. 2003).

Defendant argues that plaintiff cannot establish a causal connection between her complaints of sex discrimination and her transfer back to patrol and/or subsequent disciplinary actions taken against her because, according to defendants, those adverse actions were a

---

[3]  Because Washington courts look to interpretations of federal law when analyzing retaliation claims, the same legal analysis governs federal and state claims.  <u>See</u> <u>Little v. Windermere Relocation, Inc.</u>, 301 F.3d 958, 969 (9th Cir. 2002) (citing <u>Graves v. Dept. of Game</u>, 76 Wn. App. 705 (1994)).

ORDER GRANTING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT - 10

1   legitimate, non-discriminatory response to plaintiff's performance problems.[4]  The burden

2   therefore shifts back to plaintiff to show by a preponderance of the evidence that the challenged

3   employment decisions were made "because of" retaliation.  See Stegall, 350 F.3d at 1068.

4   Plaintiff may accomplish this goal "directly by persuading the court that a discriminatory reason

5   more likely motivated the employer or indirectly by showing that the employer's proffered

6   explanation is unworthy of credence."  Texas Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248,

7   256 (1981).  Where plaintiff offers direct evidence which, if believed, proves the fact of

8   retaliatory animus without the need for inference or presumption, such evidence is considered

9   highly probative and "plaintiff need offer 'very little' direct evidence to raise a genuine issue of

10  material fact."  Coghlan v. Am. Seafoods Co. LLC, 413 F.3d 1090, 1095 (9th Cir. 2005)

11  (quoting Godwin v. Hunt, 150 F.3d 1217, 1221 (9th Cir. 1998)).

12           Plaintiff has provided both direct and circumstantial evidence tending to show a

13  causal connection between her complaint about sex discrimination and her transfer and adverse

14  performance evaluations.  According to plaintiff's testimony, immediately after she expressed

15  her dissatisfaction with the assignments she was receiving, especially when compared with those

16  given to more junior male counterparts, defendant Rider told her that she was wrong, that her

17  complaint was adversely affecting the morale of the CID, and that if he heard any more such

18  complaints, she would be "out of the unit."  Decl. of Cynthia H. Caterson at ¶ 14 (Dkt. # 42).

19  Commander Rider's obvious displeasure that plaintiff should even suggest that there was

20  something wrong with the assignment/training process in the CID and his threat that such

21  complaints would get her transferred back to patrol raise a genuine issue of material fact

22  regarding the motivation for defendants' subsequent conduct.  In addition, plaintiff has

23  _____

24       [4]  Although defendants note that constructive criticism does not constitute an "adverse
     employment action" for purposes of a retaliation claim (Motion at 23 n. 16), they make no attempt to
25   explain why the transfer back to patrol, negative performance reviews, and negative performance notes
     would not be likely to deter a reasonable employee from engaging in protected activity.  Brooks
26   v. City of San Mateo, 299 F.3d 917, 928 (9th Cir. 2000).

27

     ORDER GRANTING IN PART DEFENDANTS'
28   MOTION FOR SUMMARY JUDGMENT - 11

1    challenged the factual basis for many of the performance problems identified by defendants, has

2    presented evidence showing a marked increase in negative performance reviews after April 1,

3    2002, and points out that defendant Rider initiated her transfer from the unit less than three

4    weeks after she told him of her complaint.  Plaintiff may proceed to trial on her retaliation claim

5    under RCW 49.60.

6        **G.  Motions to Strike**

7            In their reply memorandum, defendants move to strike the declaration of Cynthia

8    Caterson because she failed to produce a copy of her journal, on which much of her declaration

9    is based, during discovery.  Defendants have known since June 3, 2005, that plaintiff had

10   refused to produce a copy of her journal based on a claim of attorney-client privilege.  Rather

11   than bring a motion to compel production of the journal, defendants waited until the journal

12   became an issue in the summary judgment context and then sought to exclude it in its entirety.

13   Defendants made no attempt to obtain the Court's ruling on the asserted privilege or to seek a

14   timely resolution of this matter.  The Court has now authorized a second, limited deposition of

15   plaintiff to alleviate any prejudice plaintiff's failure to disclose may have caused.  Defendants'

16   motion to strike plaintiff's declaration is DENIED.

17           Although defendants did not seek or obtain the Court's permission to file an

18   overlength memorandum as required by Local Civil Rule 7(f), they filed a reply memorandum

19   that is fifteen pages long.  The Court has not considered the last three pages of the reply.  To that

20   extent, plaintiff's motion to strike, filed as a sur-reply on October 17, 2005, is GRANTED.

21           Contrary to plaintiff's interpretation of the rule, Local Civil Rule 7(g) does not

22   authorize the filing of a sur-reply to respond to defendants' motion to strike.  Except as

23   discussed during the pre-trial conference held on October 25, 2005, the Court has not considered

24   plaintiff's arguments regarding the admissibility of plaintiff's declaration.

25

26

27

28   ORDER GRANTING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 12

1    　　　　For all of the foregoing reasons, defendants' motion for summary judgment is

2    GRANTED in part and DENIED in part.  Plaintiff's claim of discrimination under the Equal

3    Protection clause of the Fourteenth Amendment and her discrimination and retaliation claims

4    under the Washington Law Against Discrimination may proceed to trial.[5]  Defendants are

5    entitled to summary judgment on plaintiff's retaliation claim under the First Amendment.

6

7    　　　　DATED this 22nd day of November, 2005.

8

9    　　　　　　　　　　　　　　*MNS S Casmik*

10   　　　　　　　　　　　　　Robert S. Lasnik
     　　　　　　　　　　　　　United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   　　　[5]  As noted in the text, plaintiff has failed to produce sufficient evidence to hold the municipality

26   liable under § 1983 for the adverse performance reports and performance notes generated after her April
     1, 2002, discussion with Commander Rider.

27

28   ORDER GRANTING IN PART DEFENDANTS'
     MOTION FOR SUMMARY JUDGMENT - 13